2026 IL App (1st) 251325

SECOND DIVISION
August 11, 2026

No. 1-25-1325

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| SMS FINANCIAL CH, LLC, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 2010 L 50115 |
| | ) | |
| CHRISTOPHER FEURER, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |
| and | ) | |
| | ) | |
| HUDSON INVESTMENT, LLC, Citation Respondent | ) | |
| | ) | |
| (Florida Financial Group, LLC and Lucky Lumper Recovery, LLC, Adverse Claimants-Appellees). | ) ) | Honorable Stephen A. Swedlow, Judge, presiding. |

JUSTICE D.B. WALKER delivered the judgment of the court.
Presiding Justice Van Tine and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held:*  We dismiss for lack of appellate jurisdiction the appeal from the order denying plaintiff's petition to set aside certain third-party liens as violative of the Uniform Fraudulent Transfer Act.  Dismissed.

¶ 2    Plaintiff SMS Financial CH, LLC (SMS), filed a petition seeking an order (1) directing citation respondent Hudson Investment, LLC (Hudson), to turn over defendant Christopher Feurer's assets that had been transferred to Hudson, and (2) setting aside as fraudulent various liens on Feurer's assets asserted by adverse claimants Florida Financial Group, LLC (FFG) and

Lucky Lumper Recovery, LLC (Lucky Lumper). After granting SMS's summary judgment motion regarding count I of its petition (regarding the assets that Hudson had transferred), the trial court subsequently held a hearing on count III of the petition (regarding setting aside FFG and Lucky Lumper's liens). At the conclusion of the hearing, the court denied count III of SMS's petition, and SMS now appeals, contending that it met its burden to show by a preponderance of the evidence that FFG and Lucky Lumper violated certain provisions of the Uniform Fraudulent Transfer Act (UFTA) (740 ILCS 160/1 *et seq.* (West 2022)). For the following reasons, we dismiss this appeal for lack of appellate jurisdiction.

¶ 3                                    BACKGROUND

¶ 4     This court has detailed the underlying facts of this case in an earlier decision. See *SMS Financial CH, LLC v. Feurer*, 2025 IL App (1st) 250033, *appeal denied*, No. 132662 (March 25, 2026) (Table). The following background is thus limited to those facts relevant to this appeal.

¶ 5     On January 28, 2010, the trial court entered a judgment by confession in favor of Amcore Bank, N.A. (Amcore), and against Feurer for $245,627.15, in connection with a loan default (the Amcore judgment). This judgment was subsequently assigned to SMS.

¶ 6     On August 12, 2011, FFG filed two breach-of-contract complaints (case Nos. 2011 L 008478 (the 8478 case) and 2011 L 008479 (the 8479 case))[1] alleging breach of contract with respect to the nonpayment of promissory notes. The trial court entered "agreed judgment" orders of $3,572,183.53 in favor of FFG and against Feurer in the 8478 case, and $518,246.58 in favor of FFG and against Feurer and Kristen Feurer (Feurer's wife) in the 8479 case. Both agreed judgment orders indicated that "the parties consent to the entry of this [o]rder."

---

[1]  This court may take judicial notice of the public documents that are included in the records of other courts. See *In re Linda B.*, 2017 IL 119392, ¶ 31 n.7; *Empire Indemnity Insurance Co. v. Chicago Province of the Society of Jesus*, 2013 IL App (1st) 112346, ¶ 20 n.4; Ill. R. Evid. 201 (eff. Jan. 1, 2011); R. 803(8) (eff. Jan. 25, 2023).

¶ 7 On May 18, 2012, Northbrook Bank & Trust (Northbrook Bank) filed a complaint (case No. 2012 L 005488) against Feurer, alleging breach of contract with respect to an unpaid $500,000 promissory note. The trial court entered judgment in favor of Northbrook Bank and against Feurer in the amount of $594,055.44. Lucky Lumper subsequently purchased this judgment.

¶ 8 In April 2021, SMS filed (1) a petition to revive the Amcore judgment, stating that the judgment and accrued interest totaled $248,417.12; and (2) a motion for leave to commence subsequent supplemental proceedings. The trial court granted the petition and motion.

¶ 9 In July 2021, the trial court entered wage deduction orders against Feurer and in favor of Lucky Lumper and FFG. In February 2022, the court additionally entered written "charging orders" stating in substance that SMS's interest in both (1) Jameson's (Feurer's employer's) distributions to Feurer and (2) Feurer's interest in one of Feurer's limited liability companies (Cohiba) is subordinate to "any prior orders and liens imposed," including the charging orders.

¶ 10 On September 28, 2023, SMS filed a petition (1) for a turnover order of Feurer's assets that had been transferred to Hudson and (2) to deny the liens of FFG and Lucky Lumper. SMS's petition consisted of three counts: (1) a claim Hudson violated the third-party citation by transferring various assets of Feurer's, (2) a claim that the transfers of Feurer's assets from Jameson to Hudson were void pursuant to the UFTA, and (3) a claim that FFG's and Lucky Lumper's liens on Feurer's assets must be set aside as fraudulent pursuant to the UFTA.

¶ 11 In count I, SMS alleged that Hudson violated the restraining provision of the third-party citation "by paying over or otherwise disposing over $292,801 belonging to Feurer" after service of the citation on May 6, 2022. In its prayer for relief, SMS asked the court to enter a judgment against Hudson "in the amount of the unpaid portion of the judgment or the amount of value of the property transferred, whichever is lesser," pursuant to section 2-1402(f)(1) of the Code (735 ILCS 5/2-1402(f)(1) (West 2022)).

¶ 12    With respect to count II, SMS alleged that Feurer and Hudson intentionally engaged in actual fraud to delay, hinder, and defraud SMS by "attempting to conceal over $1,550,000 that Feurer directed Jameson to pay to Hudson[,] to the detriment of [SMS]."  SMS alleged that the transfer of Feurer's compensation from Jameson to Hudson was also fraudulent in law because SMS had an existing judgment and "Feurer receive[d] nothing of value from Hudson in exchange for over $1,550,000 that he directed Jameson to transfer to Hudson in an account separate from Feurer," rendering Feurer insolvent.  In its prayer for relief on this count, SMS asked the trial court to enter judgment against Hudson "for the amount of assets fraudulently transferred by Feurer up to the amount of [SMS's] outstanding judgment[,] which is $530,268.22" plus interest.

¶ 13    On April 17, 2024, SMS filed its motion for summary judgment on count I of its petition. On May 29, 2024, Hudson filed its combined cross-motion for summary judgment on count I and motion for summary judgment on count II.  As to count II, Hudson argued that Feurer could not fraudulently transfer exempt property because it was unavailable to satisfy creditor claims in the first instance.  On December 17, 2024, the trial court issued a written decision granting SMS's motion for summary judgment on count I and denying Hudson's motion for summary judgment on both counts.  The court's decision included a finding, pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), that there was no just reason to delay appeal.

¶ 14    Hudson subsequently appealed, challenging the trial court's judgment on both counts I and II.  See *Feurer*, 2025 IL App (1st) 250033, ¶ 1.  With respect to count II, we noted that there were no cross-motions for summary judgment on count II (only the denial of Hudson's summary judgment motion).  *Id.* ¶ 37.  We thus dismissed Hudson's appeal from the denial of its summary judgment motion on count II for want of jurisdiction.  *Id.*  We subsequently affirmed the judgment of the trial court on count I.  See *Feurer*, 2025 IL App (1st) 250033, *appeal denied*, No. 132662 (March 25, 2026) (Table).

¶ 15 On March 20, 2025, the trial court issued a written order setting the matter for an in-person evidentiary hearing on FFG and Lucky Lumper's notice of adverse claim and "Count III of the Petition of SMS to Deny the Liens of the Adverse Claimants." On May 13, 2025, the evidentiary hearing began, and counsel for SMS, FFG, Lucky Lumper, Feurer, and Hudson appeared. On June 10, 2025, the court entered a written order denying SMS's petition. The court found that SMS "failed to meet their [*sic*] burden" and stated, "This court previously held that Third Party Citation Respondents['] adverse claim takes priority over Petitioner, SMS Financial CH, LLC [*sic*] and nothing presented during the hearing caused the court to revisit that finding."

¶ 16 This appeal follows.

¶ 17 ANALYSIS

¶ 18 On appeal, SMS contends that the trial court erred in denying its summary judgment motion on count III. In particular, SMS argues that it showed, by a preponderance of the evidence, the existence of various "badges of fraud," which in turn established that FFG and Lucky Lumper created the liens "with the actual intent" to delay, hinder, and defraud SMS in violation of section 5 of the UFTA. SMS further argues that it also established a "presumption of fraud" pursuant to section 6 of the UFTA, which FFG and Lucky Lumper failed to rebut.

¶ 19 As a preliminary matter, we address this court's jurisdiction. Regardless of whether a party has raised the issue, we have an independent duty to consider whether we have jurisdiction and dismiss an appeal for lack of jurisdiction. *Feurer*, 2025 IL App (1st) 250033, ¶ 33 (citing *Williams Montgomery & John Ltd. v. Broaddus*, 2017 IL App (1st) 161063, ¶ 32 (citing *Archer Daniels Midland Co. v. Barth*, 103 Ill. 2d 536, 539 (1984))).

¶ 20 Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) allows appeals from final judgments as a matter of right. See also Ill. Const. 1970, art. VI, § 6. "Subject to certain exceptions, an appeal

can be taken in a case only after the circuit court has resolved all claims against all parties." *State Farm Fire & Casualty Co. v. John J. Rickhoff Sheet Metal Co.*, 394 Ill. App. 3d 548, 556 (2009).

¶ 21    Rule 304(a) provides one such exception:  It states in relevant part that

> "[i]f multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both."  Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016).

The written finding may be made either at the time of, or after the entry of, a final judgment.  See *Feurer*, 2025 IL App (1st) 250033, ¶ 34.

¶ 22    "By the rule's own terms, a Rule 304(a) finding can confer appealability *only* on a judgment that is already *final*."  (Emphases added.)  *In re Marriage of Duggan*, 376 Ill. App. 3d 725, 735 (2007).  A judgment or order is "final" if it disposes of the rights of the parties, either on the entire case or on some definite and separate part of the controversy.  *Dubina v. Mesirow Realty Development, Inc.*, 178 Ill. 2d 496, 502 (1997).  In other words, a final order terminates " 'the litigation between the parties on the merits of the cause, so that, if affirmed, the trial court has only to proceed with execution of the judgment.' "  *Kellerman v. Crowe*, 119 Ill. 2d 111, 115 (1987) (quoting *Village of Niles v. Szczesny*, 13 Ill. 2d 45, 48 (1958)).

¶ 23    In this case, as noted above, SMS's petition comprised three counts:  Count I alleged a claim that Hudson's transfer of certain monies to Feurer violated both the Wage Deduction Statute[2]

---

[2] As in our prior decision, we refer to the various statutory sections under article XII, part 8, of the Code of Civil Procedure (735 ILCS 5/12-801 to 12-819 (West 2022)) as the "Wage Deduction Statute."  See *Feurer*, 2025 IL App (1st) 250033, ¶ 1, n.1.

and also the citation orders issued pursuant to section 2-1402 of the Code, count II alleged that Jameson's transfers to Hudson violated the UFTA, and count III alleged that FFG and Lucky Lumper's adverse claims should be set aside because they also violated the UFTA. The trial court issued a final judgment on count I as well as a Rule 304(a) finding, which allowed this court to resolve the appeal of that decision. See *Feurer*, 2025 IL App (1st) 250033, ¶¶ 28-29.

¶ 24 The trial court subsequently issued a final judgment on count III of SMS's petition, but there was no order—final or otherwise—disposing of count II. Although count I and count II both sought relief against the same party (Hudson), count I asserted a claim pursuant to the Wage Deduction Statute and the citation orders issued pursuant to section 2-1402 of the Code (and sought at most $292,801), count II alleged that Jameson's transfers to Hudson violated the UFTA (and sought $530,268.22 "as of September 28, 2023," in addition to accrued interest). As such, this separate claim for relief remains unresolved. Therefore, to invoke appellate jurisdiction over count III (the issue now before us), the court was required again to have either (1) issued a final order on count II, or (2) made a Rule 304(a) finding that there was no just reason for delaying either enforcement or appeal or both of its decision as to count III. Since the trial court failed to do either, appellate jurisdiction is lacking and we must dismiss this appeal for want of appellate jurisdiction. See Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016).

¶ 25                                 CONCLUSION

¶ 26 We dismiss SMS's appeal from the trial court's denial of its motion for summary judgment on count III for want of jurisdiction. Accordingly, we dismiss this appeal.

¶ 27 Dismissed.